JUDGE TORRES   14 CV 7414

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
:
CARRIE E. WIRT, on behalf of herself and :
others similarly situated, :
:
                Plaintiffs, :       C.A. No. 14-CV-
:
         - against - :
:
ALTEGRITY, INC. and :       **CLASS ACTION COMPLAINT**
HIRERIGHT, INC., :
:       **(Trial by Jury Demanded)**
                Defendants. :
:
-----------------------------------------------------------x

RECEIVED SEP 12 2014 U.S.D.C. S.D. N.Y. CASHIERS

      On behalf of herself and all others similarly situated, Plaintiff Carrie E. Wirt ("Plaintiff" or "Ms. Wirt"), by and through her attorneys, the Legal Action Center, Francis & Mailman, P.C. and Langer Grogan & Diver, P.C., respectfully alleges as follows:

## INTRODUCTION

      1.    This is a consumer class action under the New York Fair Credit Reporting Act, New York General Business Law §§ 380, *et seq.* ("NY-FCRA") and the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), brought on behalf of similarly situated New York consumers against Defendants Altegrity, Inc. ("Altegrity") and HireRight, Inc. ("HireRight"), among the nation's largest consumer reporting agencies.

      2.    Plaintiff contends that Defendants systematically violate the NY-FCRA by reporting, or maintaining in consumer files, information that is prohibited by section 380-j of that law, including theft reports based neither on criminal convictions nor signed admissions of theft, and based on convictions more than seven years old.

3. Plaintiff also contends that Defendants systematically violate FCRA section 1681e(b) by failing to follow reasonable procedures to assure maximum accuracy of the information reported about consumers.

4. Defendants classified Plaintiff as a thief within a proprietary database called the HireRight National Theft Database ("HNTD") and distributed this damaging information to potential retail-store employers, such as Bon-Ton Stores, Inc. ("Bon-Ton"). Defendants classify individuals as thieves based upon information submitted by subscribing employers. In response to inquiries submitted by other HNTD users regarding pending employment applications, Defendants prepare and disseminate standardized theft reports. Because many retailers use HNTD, the practical consequence of an inaccurate entry within the HNTD is to render employment or promotion unlikely within the retail industry—if not to preclude it altogether—for the seven years the alleged theft incident is reported to HNTD users.

5. On October 15, 2012, Plaintiff Carrie E. Wirt was suspended for three days from her employment at Bon-Ton based on a standardized background screen conducted by Defendants pursuant to an agreement with Bon-Ton. HireRight inaccurately stated that Plaintiff engaged in "ASSOCIATE DISHONESTY" based on an alleged "Cash Theft" in the amount of $2,545.03 on or about December 6, 2010. The inaccurate report was based on inaccurate information in the HNTD database, which Defendants received from Sears Roebuck & Co. via its wholly-owned subsidiary Kmart, Plaintiff's former employer. The theft report was grossly inaccurate and defamatory.

6. In violation of the NY-FCRA, Defendants willfully failed to comply with section 380-j by reporting prohibited information relative to the theft charge.

7. In further violation of the NY-FCRA, Defendants reported to Bon-Ton the existence of two 16 years old misdemeanor convictions.

8. Plaintiff seeks injunctive relief requiring Defendants to cease the practices complained of herein and an award of monetary damages, costs and attorneys' fees.

## PARTIES

9. Plaintiff Carrie E. Wirt is an adult individual residing in Hudson Falls, New York.

10. Defendant Altegrity, Inc. is a business entity and/or a consumer reporting agency ("CRA") that provides consumer reports for employment purposes. Altegrity has offices at 600 Third Avenue, 4th Floor, New York, NY, 10016. Altegrity owns, operates and controls Defendant HireRight. Altegrity markets itself as "specializing in risk solutions, ediscovery, data recovery, employment and credit screening, security solutions and background investigations for the Federal government." http://www.altegrity.com/.

11. Defendant HireRight, Inc. is a CRA that provides consumer reports for employment purposes. HireRight is wholly owned by Altegrity and does business throughout the United States, including in the Southern District of New York. HireRight's website is www.hireright.com, and general information about HireRight's business can be found at www.hireright.com/About-Us.aspx. HireRight states on its website: "HireRight is a leading provider of on-demand employment background checks, drug screening and I-9 employment eligibility solutions that help organizations efficiently implement, manage and control employment screening programs. Many companies, including more than one third of the Fortune 500, trust HireRight to deliver customer-focused solutions that provide greater efficiency and faster results."

12. Upon information and belief, Defendants Altegrity and HireRight act in concert with each other with respect to the public record reporting and events that are the subject of this action.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that one of the claims asserted herein arises under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*.

14. Venue is properly in this District pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

### Background: Defendants' Screening Activities

15. Defendants are among the largest of this nation's CRAs and employment background screening companies, *i.e.*, those that provide "consumer reports" and "investigative consumer reports," as defined by N.Y. Gen. Bus. Law § 380-a(c), (d) to employers.

16. An employment screening product owned and marketed by Defendants is a product known as the HireRight National Theft Database ("HNTD"). According to Defendants,

> The origin of the HireRight National Theft Database dates back to 1918, when a group of retailers began sharing information on internal theft in an effort to prevent other retailers from hiring known thieves. Since less than half of internal incidents are now referred for prosecution, the National Theft Database remains a unique source of retail theft information.
>
> The National Theft Database contains more than 500,000 records of shoplifting and employee theft incidents submitted by 500 member companies. Because the disposition of an incident can change over time, HireRight takes the added step of re-verifying the data when an incident of theft or fraud is detected. Re-verification of incidents keeps the data fresh and protects hiring managers from making decisions based on past incidents that were later resolved.

http://www.hireright.com/National-Theft-Database.aspx?apsi=0.

17. The subscribing customer-participants in HNTD include some of the nation's largest retail chains, such as Sears, Kmart and Bon-Ton.

18. Under section 380-j(a) of the NY-FCRA, CRAs such as Defendants shall not report, or maintain in the file of a consumer, certain prohibited information "relative to an arrest

or a criminal charge unless there has been a criminal conviction for such offense, or unless such charges are still pending"; information "relative to a consumer's race, religion, color, ancestry or ethnic origin"; information "which it has reason to know is inaccurate." N.Y. Gen. Bus. Law § 380-j(a),

19. Under section 380-j(b) of the NY-FCRA, a CRA shall not report information relative to a detention of an individual by a retail mercantile establishment, unless (a) the individual has executed an uncoerced admission of wrongdoing; (the "admission requirement"); (b) the mercantile establishment has, prior to transmitting information about the detention to a CRA, delivered to the individual a written notice containing (i) a statement that the information may be furnished to a consumer reporting agency, and that such information may be reported to a retail mercantile establishment for employment purposes; (ii) a statement that the individual may request disclosure by the consumer reporting agency of information in the agency's file on such individual, and that the completeness or accuracy of such information may be disputed by the individual; and (iii) the name and address of such CRA (the "written notice of rights"); and, (c) the user of such information certifies to the CRA that such information will be used only in connection with employment purposes (the "certification requirement"). N.Y. Gen. Bus. Law § 380-j(b).

20. New York law also prohibits a CRA from reporting records of convictions of crimes which antedate the report by more than seven years where the annual salary equals or "may reasonably be expected to be less than $25,000." N.Y. Gen. Bus. Law § 380-j(f)(1)(v); N.Y. Gen. Bus. Law § 380-j(f)(2)(iii).

21. Both New York law and the FCRA require that CRAs must maintain reasonable procedures to assure the maximum possible accuracy of the information they report about consumers. N.Y. Gen. Bus. Law § 380-j(e); 15 U.S.C. § 1681e(b).

22. A criminal record can be the most significant component of a background check and can often negatively impact a consumer's application for employment or a consumer's employment. As a result, the NY-FCRA contains specific provisions that impose duties of special care that CRAs must take when reporting public records in connection with employment. N.Y. Gen. Bus. Law § 380-g.

23. Defendants' knowing, deliberate and willful practice is to report information prohibited by section 380-j(a), (b), (e) and f(v) relative to New York consumers.

24. Defendants persist in these illegal practices despite HireRight's membership in the National Association of Professional Background Screeners ("NAPBS"), an organization that instructs its members to not furnish reports under circumstances where there are reasonable grounds to believe that the report will be used in violation of state law. *See, e.g.*, Pamela Q. Devata, *et. al.*, *Safe Screening, Safe Hiring*, HR Advisor, July/August 2009, at 12-18, made available for its clients by NAPBS at http://www.napbs.com/business/HR_Magazine_Article_8-28-09.pdf.

25. Defendants include in background reports prohibited information relative to New York consumers and information about old criminal convictions which antedate the report by more the 7 years for positions paying less than $25,000 annual salary in spite of its awareness that the New York law regulates its ability to do so. *See* www.hireright.com/blog/2013/01/does-your-background-check-company-comply-with-3-key-provisions-of-the-fcra (stating that "state laws may also limit the information that can be reported by a CRA.").

26. These practices regarding the reporting of prohibited information relative to New York consumers violate fundamental protections afforded to employees and potential employees under the NY-FCRA, are contrary to the unambiguous language of the statute, and are counter to longstanding judicial and regulatory guidance from authorities interpreting similar provisions

of the federal FCRA. *See Serrano v. Sterling Testing Systems, Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008); *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55, http://www.ftc.gov/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in [15 U.S.C.§ 1681c(a)].").

**The Facts Pertaining to Plaintiff Carrie E. Wirt**

27. Plaintiff Carrie Wirt was employed as a cashier at Kmart in December 2010 when she was wrongfully accused of failing to put a certain amount of money into the store's vault at the end of the workday.

28. Ms. Wirt did not execute an admission of wrongdoing.

29. Following the accusation, Plaintiff was arrested and then incarcerated when she could not meet the bail requirements.

30. She was released on her own recognizance several days later.

31. On or around October 25, 2011, the theft charge was dismissed and sealed under Section 160.50 of New York Criminal Procedure Law.

32. Kmart, through its parent Sears and/or otherwise, submitted information about Ms. Wirt to Defendants, which in turn created a theft record in the HNTD system associated with Ms. Wirt's address and social security number.

33. Prior to reporting the theft, Kmart never provided Ms. Wirt with the written notice of rights or provided the certification to Defendants required by section 380-j(b)(2) and 380-j(b)(3).

34. In or around the end of August 2012, Ms. Wirt applied for the position of sales associate at Bon-Ton and was hired following an interview. The position paid less than $25,000 annually.

35. In response to a question during the application process whether she had any felony convictions, Ms. Wirt replied truthfully that she did not.

36. Ms. Wirt began working at Bon-Ton in September 2012. Ms. Wirt was asked for her consent to have a background check run on her, and she consented.

37. Ms. Wirt receives vocational services from a non-profit in Glenn Falls, New York. On October 15, 2012, the director of the non-profit told Ms. Wirt that Bon-Ton's human resources manager had informed the non-profit that Bon-Ton had received a background check that indicated Ms. Wirt had stolen money from her previous employer, Kmart.

38. The HNTD component of the background report that Defendants sold to Bon-Ton relating to Plaintiff included the following information relative to the theft incident:

> TYPE OF INCIDENT: CASH THEFT
> INCIDENT/DISPOSITION DATE: 12/6/2010
> AMOUNT: $2,545.03
> DESCRIPTION: ASSOCIATE DISHONESTY
> NOTES:
> INFORMATION PROVIDED BY SUBMITTING COMPANY:
> EMPLOYEE INCIDENT: YES
> STATEMENT:
> RESTITUTION:
> DOCUMENTATION: YES
> TERMINATED:
> PROSECUTED:

(the "Cash Theft Report")

39. The Cash Theft Report was inaccurate and grossly defamatory. Plaintiff did not commit the theft crime reported about her.

40.     The information contained in the Cash Theft Report related to the arrest initiated by Kmart regarding the theft incident, but it was illegal to report such information because there was never a conviction for such offense.

41.     Pursuant to the HNTD database, the Cash Theft Report was reported as if it were a detention by a retail mercantile establishment, yet it was illegal to report such information because Ms. Wirt had never executed an uncoerced admission of wrongdoing, and neither Kmart nor Defendants complied with the written notice of rights and certification requirements imposed by sections 380-j(b)(2) and (3) of the NY-FCRA.

42.     Given that the information contained within the Cash Theft Report was not supported by a conviction or an admission of wrongdoing, it was nothing more than an unsubstantiated and unreliable subjective allegation of wrongdoing by a Kmart employee, as with much of the information in the HNTD. As such, it was merely reckless defamation that fell grossly short of both the NY-FCRA's and FCRA's standard of "maximum possible accuracy," and thus legally prohibited from being reported.

43.     In addition to the inaccurate Cash Theft Report, Defendants also reported two sixteen-year-old misdemeanor convictions from Santa Cruz, California in January 1996 for driving under the influence and driving with a suspended license.

44.     Ms. Wirt and an employee at the non-profit vocational services organization met with Bon-Ton's human resources manager and the manager of the Bon-Ton store where Ms. Wirt worked. Ms. Wirt explained the circumstances of the Kmart incident and the fact that the theft charges were dismissed.

45.     As a direct result of Bon-Ton's use of the Defendants' background report and their scoring of Ms. Wirt through its use of the HNTD database, Bon-Ton immediately

suspended Ms. Wirt, causing her damage to reputation, embarrassment, humiliation and other mental and emotional distress.

46. On or about October 17, 2012, Bon-Ton reinstated Ms. Wirt without providing any reason.

47. On January 12, 2013, Ms. Wirt was terminated from her position at Bon-Ton.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action on behalf of the following classes:

(a) For violations of NY-FCRA sections 380-j(a) and (b):

All employees or applicants for employment residing in the State of New York who were the subject of a background report sold by Defendants to a third party, within two years from the date of the filing of this action through and during the pendency of this action, that was furnished for an employment purpose, and that disclosed information relative to one or more of the following:
(1) An arrest or criminal charge in the absence of a conviction for such offense or where the charges were not pending;
(2) A consumer's race, religion, color, ancestry, or ethnic origin;
(3) A detention of an individual by a retail mercantile establishment where the consumer had not executed an admission of wrongdoing, or the merchant who reported the incident did not provide the written notice of rights to the consumer prior to reporting the incident, or the user did not provide a certification to Defendants that the information reported would be used only in connection with employment purposes.

(b) For violations of NY-FCRA section 380-j(f)(1)(v):

All employees or applicants for employment at an annual salary of less than twenty-five thousand dollars residing in the State of New York who were the subject of a report sold by Defendants to a third party, within two years from the date of the filing of this action through and during the pendency of this action, that was furnished for an employment purpose, and disclosed the existence of a record of a criminal conviction that antedated the report by more than seven years.

(c) For violation of FCRA section 1681e(b):

All employees or applicants for employment residing in the State of New York who were the subject of a background report sold by Defendants to a third party, within five years from the date of the filing of this action through and during the pendency of this action, that was furnished for an employment purpose,

and that disclosed information from Defendants' HNTD that did not pertain to a conviction or where the consumer had executed an admission of theft.

49.     **Numerosity. FED. R. CIV. P. 23(a)(1).** The class members are so numerous that joinder of all is impractical. Upon information and belief, Defendants compile, report and maintain files on hundreds if not thousands of New York residents who apply for employment each year. Defendants' HNTD contains those persons' names and addresses and class members will be identifiable through documents maintained by Defendants.

50.     **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

(a)     Whether Defendants reported or maintained in their files on New York consumers information relative to an arrest where there had not been a criminal conviction for such offense, or where the charges were not still pending;

(b)     Whether Defendants reported or maintained in their file on New York consumers information relative to a criminal charge where there had not been a criminal conviction for such offense, or where the charges were not still pending;

(c)     Whether Defendants reported or maintained in their file on New York consumers information relative to the consumer's race, religion, color, ancestry or ethnic origin;

(d)     Whether Defendants complied with the written notice of rights and certification requirements imposed by sections 380-j(b)(2) and (3) of the NY-FCRA;

(e)     Whether Defendants reported or maintained in their file on New York consumers information relative to the consumer that it had reason to know was inaccurate;

(f)     Whether Defendants, in regard to the employment of New York

individuals at an annual salary less than twenty-five thousand dollars, made a consumer report containing records of conviction of crime which, from the date of disposition, release, or parole, antedated the report by more than seven years;

(g) Whether Defendants failed to maintain reasonable procedures to assure the maximum possible accuracy of the information reported from HNTD by reporting information about theft incidents where the consumer was neither convicted of a theft crime nor admitted to theft.

51. **Typicality. FED. R. CIV. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that she seeks for absent class members.

52. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes. Her interests are aligned with, and are not antagonistic to, the interests of the members of the Classes she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Classes.

53. **Injunctive and Declaratory Relief. FED. R. CIV. P. 23(b)(2).** Defendants have acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

54. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the

members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT I
### N.Y. GEN. BUS. LAW § 380-j(a)
### (CLASS CLAIM)

55. Plaintiff realleges and incorporates by reference all preceding allegations.

56. Plaintiff is a "consumer," as defined by N.Y. Gen. Bus. Law § 380-a(b).

57. Defendants' background reports are "consumer reports" within the meaning of N.Y. Gen. Bus. Law § 380-a(c).

58. The NY-FCRA provides: "No consumer reporting agency shall report or maintain in the file on a consumer, information: (1) relative to an arrest or a criminal charge unless there has been a criminal conviction for such offense, or unless such charges are still pending, (2) relative to a consumer's race, religion, color, ancestry or ethnic origin, or (3) which it has reason to know is inaccurate." N.Y. Gen. Bus. Law § 380-j(a).

59. Defendants willfully violated section 380-j(a) of the NY-FCRA by reporting information prohibited by the statute.

WHEREFORE, Plaintiff Wirt and the Class pray for relief as follows:

A. An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An order declaring Defendants' background reporting practices to be in violation of N.Y. Gen. Bus. Law § 380-j(a);

C. An order entering injunctive relief against Defendants and ordering Defendants to amend their policies and practices to comply with N.Y. Gen. Bus. Law § 380-j(a);

D. An award of punitive damages for Plaintiff and the Class;

E. An award of pre-judgment and post-judgment interest as provided by law;

F. An award of attorneys' fees and costs; and,

G. Such other relief as the Court deems just and proper.

## COUNT II
## N.Y. GEN. BUS. LAW § 380-j(b)
## (CLASS CLAIM)

60. Plaintiff realleges and incorporates by reference all preceding allegations.

61. Plaintiff is a "consumer," as defined by N.Y. Gen. Bus. Law § 380-a(b).

62. Defendants' background reports are "consumer reports" within the meaning of N.Y. Gen. Bus. Law § 380-a(c).

63. The NY-FCRA provides: "Notwithstanding the provisions of paragraph one of subdivision (a) of this section, a consumer reporting agency may collect, evaluate, prepare, use or report information relative to a detention of an individual by a retail mercantile establishment, provided that: (1) the individual has executed an uncoerced admission of wrongdoing." N.Y. Gen. Bus. Law § 380-j(b)(1).

64. The NY-FCRA further provides that a CRA such as Defendants must comply with the statute's written notice of rights and certification requirements. N.Y. Gen. Bus. Law § 380-j(b)(2), (3).

65. Defendants willfully violated section 380-j(b) of the NY-FCRA by reporting information prohibited by the statute and by failing to comply with the written notice of rights and certification requirements.

WHEREFORE, Plaintiff Wirt and the Class pray for relief as follows:

A. An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An order declaring Defendants' background reporting practices to be in violation of N.Y. Gen. Bus. Law § 380-j(b);

C. An order entering an injunction against Defendants and ordering Defendants to amend their policies and practices to comply with N.Y. Gen. Bus. Law § 380-j(b);

D. An award of punitive damages for Plaintiff and the Class;

E. An award of pre-judgment and post-judgment interest as provided by law;

F. An award of attorneys' fees and costs; and,

G. Such other relief as the Court deems just and proper.

### COUNT III
### N.Y. GEN. BUS. LAW § 380-j(f)(1)(v)
### (CLASS CLAIM)

66. Plaintiff realleges and incorporates by reference all preceding allegations.

67. Plaintiff is a "consumer," as defined by N.Y. Gen. Bus. Law § 380-a(b).

68. Defendants' background reports are "consumer reports" within the meaning of N.Y. Gen. Bus. Law § 380-a(c).

69. The NY-FCRA provides: "no consumer reporting agency may make any consumer report containing any of the following items of information . . . (v) records of conviction of crime which, from date of disposition, release, or parole, antedate the report by more than seven years." N.Y. Gen. Bus. Law § 380-j(f)(1)(v).

70. Defendants willfully violated section 380-j(f)(1)(v) of the NY-FCRA by reporting information prohibited by the statute.

WHEREFORE, Plaintiff Wirt and the Class pray for relief as follows:

A. An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An order declaring Defendants' background reporting practices to be in violation of N.Y. Gen. Bus. Law § 380-j(f)(1)(v);

C. An order entering an injunction against Defendants and ordering Defendants to amend their policies and practices to comply with N.Y. Gen. Bus. Law § 380-j(f)(1)(v);

D. An award of statutory and punitive damages for Plaintiff and the Class;

E. An award of pre-judgment and post-judgment interest as provided by law;

F. An award of attorneys' fees and costs; and,

G. Such other relief as the Court deems just and proper.

### COUNT IV
### FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(b)
### (CLASS CLAIM)

71. Plaintiff realleges and incorporates by reference all preceding allegations.

72. Defendants are each a "consumer reporting agency," as defined by FCRA, 15 U.S.C. § 1681a(f).

73. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

74. At all times pertinent hereto, the above-mentioned background report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

75. Defendants willfully and negligently violated 15 U.S.C. § 1681e(b) by failing to maintain reasonable procedures to assure maximum possible accuracy in the preparation of

Plaintiff's and the Class' background reports and the files published by reporting unreliable, unconfirmed, unsubstantiated and unverifiable allegations of theft to employers.

WHEREFORE, Plaintiff Wirt and the Class seek judgment in her favor and against Defendants for the following relief:

    A.    Statutory damages of $1000;

    B.    Actual damages;

    C.    Punitive damages;

    D.    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

    E.    Such other and further relief as may be necessary, just and proper.

## COUNT V
## N.Y. GEN. BUS. LAW § 380-j(e)
## (INDIVIDUAL CLAIM)

76.    Plaintiff realleges and incorporates by reference all preceding allegations.

77.    Plaintiff is a "consumer," as defined by N.Y. Gen. Bus. Law § 380-a(b).

78.    Defendants' background reports are "consumer reports" within the meaning of N.Y. Gen. Bus. Law § 380-a(c).

79.    The NY-FCRA provides that "Consumer reporting agencies shall maintain reasonable procedures designed to assure the maximum possible accuracy of the information concerning the individual about whom the report relates. N.Y. Gen. Bus. Law § 380-j(e).

80.    Defendants willfully and negligently violated section 380-j(e) of the NY-FCRA by reporting the theft incident and "Cash Theft Report" about Ms. Wirt when the charges initiated by Kmart had been dismissed and she never executed any admission of wrongdoing.

81.    As a result of Defendants' violations of section 380-j(e) of the NY-FCRA, Plaintiff Wirt suffered actual damages including but not limited to: loss of employment

opportunity, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

82. The violations by Defendants were willful and negligent.

83. Plaintiff is entitled to recover actual damages, punitive damages, costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to NY-FCRA sections 380-l and 380-m.

WHEREFORE, Plaintiff Wirt seeks judgment in her favor and against Defendants for the following relief:

A. Actual damages;

B. Punitive damages;

C. Costs and reasonable attorneys' fees pursuant to N.Y. Gen. Bus. Law §§ 380-1 and 380-m; and

D. Such other and further relief as may be necessary, just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 12, 2014
New York, New York

**LEGAL ACTION CENTER**

By: *Sally Friedman*
Sally Friedman (SF-3344)
Monica Welby (MW-7373)
225 Varick Street, Suite 402
New York, NY 10014
Tel: (212) 243-1313
Fax: (212) 675-0286
Email: mwelby@lac.org
sfriedman@lac.org

-19-

**FRANCIS & MAILMAN, P.C.**
James A. Francis (*pro hac vice forthcoming*)
Mark D. Mailman (*pro hac vice forthcoming*)
David A. Searles (*pro hac vice forthcoming*)
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000
Email: jfrancis@consumerlawfirm.com
        mmailman@consumerlawfirm.com
        dsearles@consumerlawfirm.com

**LANGER GROGAN & DIVER, P.C.**
Irv Ackelsberg (*pro hac vice forthcoming*)
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703
Email: iackelsberg@langergrogan.com

Attorneys for Plaintiff and Class